# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL STRATEGIC CANCER ALLIANCE, LLC<br><br>v.<br><br>STICHTING KATHOLIEKE UNIVERSITEIT | CIVIL ACTION<br><br>NO. 17-2024 |

## MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS

**Baylson, J.**                                                                                                                         **October 18, 2017**

### I.     Introduction

Defendant Stichting Katholieke Universiteit moves under Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff International Strategic Cancer Alliance, LLC's complaint for failure to state a claim. Defendant contends that Plaintiff's breach of contract, unjust enrichment, promissory estoppel, and fraud by concealment claims are barred by the statute of limitations and that Plaintiff has inadequately pled the existence of an agreement.

### II.     Factual[1] and Procedural Background

According to the Complaint, Plaintiff refers its clients to physicians for care and treatment. Plaintiff also provides assistance to other health care providers to obtain state-of-the-art cancer diagnosis and treatment procedures. (ECF 1, "Compl." ¶ 5). In or about 2006, Dr. Orn Adalsteinsson, Chief Executive Officer of Plaintiff, became aware of a diagnostic procedure using a novel contrast agent, ferumoxtran-10 (brand name, "Combidex") owned and developed by AMAG Pharma ("AMAG"). (Id. ¶ 6). In 2006, Plaintiff began directing patients to Defendant for MRI scans using Combidex. (Id. ¶ 9).

Dr. Barentsz, Head of the Department of Radiology at Defendant, met in Pennsylvania with representatives of Plaintiff to develop a strategy to acquire and keep

---

[1] For purposes of this motion, the Court accepts as true the facts contained in Plaintiff's Complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

1

Combidex available for the treatment of referred cancer patients. (Id. ¶ 11). Defendant also expressed a desire to partner with Plaintiff so that both would have access to Combidex. (Id. ¶ 12). Thereafter, Plaintiff initiated meetings with AMAG to convince them to license Combidex to Defendant. (Id.)

At a meeting between Plaintiff, Defendant, and AMAG on or about April 22, 2010, AMAG agreed to continue discussions with both Plaintiff and Defendant regarding licensing Combidex to Defendant. (Id. ¶ 13). Plaintiff and Defendant developed a Letter of Intent which after intensive negotiations conducted by Dr. Adalsteinsson, resulted in a Service Agreement between AMAG and Defendant dated May 19, 2011. (Id. ¶ 14). The Service Agreement allowed Defendant, for a period of one year, to produce Combidex for use in clinical trials and to determine if the product could be produced according to its specification. (Id. ¶ 14). Dr. Adalsteinsson undertook efforts to recruit Dr. Lewis, the inventor of Combidex, to participate in the Service Agreement. Plaintiff even drafted Dr. Lewis's consulting contract with Defendant at Plaintiff's own expense. (Id. ¶ 15). In late 2011 and 2012, Plaintiff, jointly with Defendant, conducted further negotiations with AMAG for a limited territorial license of Combidex. (Id. ¶ 16).

Because AMAG had no further interest in producing or licensing Combidex to third parties (id. ¶ 17), Plaintiff convinced AMAG to sell all of its Combidex-related assets to Defendant on favorable terms (id. ¶ 18). As part of these discussions, Defendant assured Plaintiff that it would be allowed to: (1) take the lead in seeking FDA approval of Combidex, and (2) set up a patient treatment center in North America making use of Combidex. (Id. ¶ 19). Dr. Adalsteinsson had numerous meetings with Dr. Barentsz to discuss the best plan for obtaining FDA approval and Plaintiff's role in that process. (Id.) Specifically, Dr. Barentsz assured Dr. Adalsteinsson that Plaintiff would receive rights to acquire and use the Combidex nanoparticle in North America as well as the ability to use Combidex for clinical trials to

obtain FDA approval.  Id.  Dr. Adalsteinsson pursued fundraising efforts to assist Defendant in funding its purchase of rights to Combidex.  (Id.)  The parties prepared term sheets in December 2012, followed by an Asset Purchase Agreement between AMAG and Defendant, which closed on or about February 19, 2013.  (Id.)

Plaintiff took physical possession of approximately half of AMAG's documents and records relating to Combidex, including those pertaining to FDA approval.  (Id. ¶ 20).  As agreed, Plaintiff maintains these materials to this day in a storage facility at its own expense.  (Id.)  In 2014, Defendant resumed manufacturing Combidex, after acquiring the rights to do so.  (Id. ¶ 21).  Later, in November 2014, at the request of Defendant, Dr. Adalsteinsson attended a meeting wherein he participated in mapping out a strategy for FDA approval of Combidex in the United States.  (Id. ¶ 22).

In 2015, Defendant informed Plaintiff that it was commercializing Combidex through its new for-profit holding company, SPL Medical B.V. ("SPL"), to which, "on information and belief, Defendant transferred the Combidex technology assets."  (Id. ¶ 24).  Defendant further informed Plaintiff that it was collaborating with a different U.S. partner to bring Combidex to the U.S. market and that it would not involve Plaintiff at all.  (Id.)  Defendant provided Plaintiff no compensation or value for the benefits Plaintiff conferred on Defendant.  (Id. ¶ 25).

Plaintiff filed its Complaint on May 3, 2017.  (ECF 1).  Defendant filed its Motion to Dismiss on July 17, 2017.  (ECF 8).  Plaintiff filed its Response to the Motion on August 18, 2017.  (ECF 13).  Defendant filed its Reply in Support of its Motion on August 30, 2017.  (ECF 14).

### III. Parties' Contentions

The Complaint raises four claims:

- Count I: Breach of Oral Contract;
- Count II: Unjust Enrichment (*Quantum Meruit*);

- Count III: Promissory Estoppel; and
- Count IV: Fraud by Concealment.

### A. Breach of Contract and Promissory Estoppel (Counts I and III)

The Complaint alleges that Defendant refused to provide the promised consideration in exchange for all the services Plaintiff performed. Defendant contends in its Motion to Dismiss that Plaintiff has failed to adequately plead: 1) a manifestation of an intent to be bound by the terms of the agreement; and (2) sufficiently definite terms of the alleged contract. As a result, Defendant asserts, the complaint fails to set forth "sufficient factual matter" establishing the existence of an oral contract. (See ECF 8). Plaintiff responds that the intent to be bound is implicit in the parties' conduct, that Plaintiff's services constitute consideration, and that the surrounding circumstances further bolster its claims. (See ECF 13). In its Reply, Defendant highlights that, because the basic terms of a contract—compensation, consideration, duration, and the like—are essential to pleading and missing here, the Complaint must be dismissed. (See ECF 14).

### B. Unjust Enrichment (Count II)

The Complaint alleges Plaintiff conferred benefits upon Defendant and Defendant's retention of those benefits without compensating Plaintiff would amount to unjust enrichment. Defendant argues that Plaintiff has not pleaded sufficient facts to demonstrate that it would be inequitable for Defendant to retain the alleged value of the benefits (if any) contributed by Plaintiff. Plaintiff responds that it has sufficiently pled the elements for unjust enrichment found in Kontonotas,[2] which is sufficient on Rule 12(b)(6) review. Defendant replies that the district court opinion giving rise to Kontonotas based its holding on specific allegations of compensation set forth in that complaint and that, as a result, Kontonatas is inapplicable to this case.

---

[2] Kontonotas v. Hygrosol Pharm. Corp, 424 F. App'x 184, 186 (3d Cir. 2011).

### C. Fraud by Concealment (Count IV)

The Complaint also includes a claim for fraud by concealment, alleging that Defendant Plaintiff intentionally concealed its intentions to form a for-profit company, commercialize Combidex, and cut Plaintiff out of its dealings involving Combidex. Plaintiff claims Defendant had a duty to speak because the parties were engaged in a joint effort, there was a relationship of trust and confidence, and Defendant was a larger and more sophisticated entity that exhibited domination and influence over Plaintiff. In the Motion to Dismiss, Defendant contends this claim is inadequately pled in the Complaint because: (1) Plaintiff does not allege any particular facts about the purported misleading statements made by Defendant (when, where and by whom); and (2) there is no duty to speak in an "arms-length" business relationship. Plaintiff responds that the heightened pleading standard for fraud claims is applied more flexibly to claims of fraudulent concealment, where, by definition, "key factual information remains within the defendant's control as in this case and therefore the complaint is properly pled." In its Reply, Defendant argues that Plaintiff's position—i.e., that information disparities in business negotiations create confidential relationships—is contrary to law.

Defendant also contends that Plaintiff's fraudulent concealment claim is barred by the "gist of the action" doctrine. Plaintiff responds that Defendant's actions give rise to Plaintiff's separate action for fraud apart from its other claims.

### D. Statute of Limitations

Additionally, Defendant argues that the claims are barred by the statute of limitations. Plaintiff responds that its claims are timely because the statute of limitations began to run when Plaintiff knew or should have known that Defendant breached the contract/promises, in 2015. Defendant replies that the Complaint lacks "precision or some measure of substantiation" to survive the limitations bar.

## IV. Legal Standard for Motion to Dismiss for Failure to State a Claim

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its fact.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)).

## V. Discussion

### A. Statute of Limitations

In Pennsylvania,[3] the statute of limitations for breach of contract claims is four years. Steiner v. Markel, 968 A.2d 1253, 1255, n.5 (Pa. 2009) (citing 42 Pa.C.S. § 5525). The equitable claims also have a four year limitations period while fraud has a two year limitations period. See Crouse v. Cyclops Indus., A.2d 606, 610 (Pa. 2000); 42 Pa.C.S. § 5524.

The statute of limitations begins to run when the cause of action accrues, which, under Pennsylvania law, occurs when the contract is breached. Colonial Assurance Co. v. The Mercantile & General Reinsurance Co., 297 F.Supp.2d 764, 769–70 (E.D. Pa. 2003). However, "[u]nder Pennsylvania's discovery rule, the statute of limitations will not begin to run until the plaintiff reasonably knows or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." In re Mushroom Transp. Co. Inc., 382 F.3d 325, 338 (3d Cir. 2004)

Plaintiff alleges that its agreement with Defendant was that Defendant would perform its part of the contract once Plaintiff had assisted it in acquiring Combidex. Thus, the alleged

---

[3] This Court has diversity jurisdiction under 28 U.S.C. § 1332, and therefore applies Pennsylvania law to all substantive legal questions. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

injury or breach of contract occurred at the time that Defendant acquired Combidex and acted in a manner contrary to Plaintiff's expectations; which Plaintiff alleges is in 2015. Having filed the Complaint on May 3, 2017, Plaintiff alleged sufficient facts to warrant the Court denying any Motion to Dismiss as to the statute of limitations issue on all counts, except for the fraud count. Because the statute of limitations for fraud is two years, and the Court will permit Plaintiff to file an amended complaint on that count, Plaintiff must allege sufficient facts to bring the fraud claim within the two year statute of limitations.

### B. Breach of Contract

To state a claim for breach of oral contract, a claimant need only allege: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) damages from the breach. Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)) (internal punctuation omitted).

The elements of an enforceable contract under Pennsylvania law are:

(1) manifestation of intent to be bound by the terms of the agreement;
(2) sufficiently definite terms; and
(3) an agreement supported by adequate consideration.

See Szymanski v. Sacchetta, No. 2:10-cv-02336- JD, 2012 WL 246249, at *4 (E.D. Pa. Jan. 26, 2012) (citing Johnston the Florist, Inc. v. TEDCO Constr. Corp., 657 A.2d 511, 516 (Pa. Super. Ct. 1995)).

#### a. Intent to Be Bound

In the case of oral contracts, "courts must look to surrounding circumstances and course of dealing between the parties in order to ascertain their intent" to be bound. Szymanski, 2012 WL 246249, at *4 (quoting Boyle v. Steiman, 631 A.2d 1025, 1033 (Pa. Super. Ct. 1993)).

In its Complaint, Plaintiff describes itself as providing assistance to other health care providers to obtain state-of-the-art cancer diagnosis and treatment procedures. Plaintiff then details the manner in which it, along with Defendant, went about acquiring rights in Combidex from AMAG. At several stages in the timeline for acquiring Combidex, Plaintiff alleges that Defendant "expressed a desire" to partner with Plaintiff (id. ¶ 12), and made "assurances" about certain benefits that Plaintiff would receive (id. ¶ 19). It is on these assurances that Plaintiff bases its case for the existence of an oral contract.

### b. Sufficiently Definite Terms

The Restatement offers guidance on when terms of a contract are "reasonably certain": "if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." Restatement (Second) of Contracts § 33. (1981).

### c. Consideration

A claimant must also adequately plead an exchange of benefits (i.e., consideration) in order to overcome a motion to dismiss. Always in Serv., Inc. v. Supermedia Servs.--E., Inc., No. 11-cv-127, 2012 WL 717233, at *6 (E.D. Pa. Mar. 5, 2012); CoreStates Bank, 723 A.2d at 1058.

As summarized above, the Complaint pleads sufficient facts to show an "exchange." In paragraph 27, Plaintiff alleges that in return for its services to Defendant, Plaintiff and Defendant agreed what Plaintiff could expect to receive in return. Although there are not detailed facts alleged, the Court finds this is a sufficient allegation for the contract claim to proceed to discovery.

### C. Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit 'under such circumstances that it would

be inequitable for defendant to retain the benefit without payment of value.'" Giordano v. Claudio, 714 F. Supp. 2d 508, 530 (E.D. Pa. 2010) (quoting Filippi v. City of Erie, 968 A.2d 239, 242 (Pa. Commw. Ct. 2009)).

Plaintiff relies on an employment case to argue that it has pled its claim for unjust enrichment sufficiently. See Thompson v. U.S. Airways, Inc., 717 F. Supp. 2d 468, 473, 480–481 (E.D. Pa. 2010). However, this case is inapposite for drawing parallels with the present case because the relationship between the parties was that of an employer and employee.

Plaintiff also relies on Kontonotas v. Hygrosol Pharm. Corp., in which the Third Circuit affirmed the granting of unjust enrichment relief where:

> "(1) [Plaintiff] rendered a service to [Defendant] in good faith by introducing it to [a third party];
>
> (2) [Defendant] accepted that service when it entered into a Licensing Agreement with [the third party "for the development of pharmaceutical products"];
>
> (3) [Plaintiff] had a reasonable expectation of compensation for the service [where Defendant had offered it a "fair commission for [its] efforts"]; and
>
> (4) the evidence was sufficient to demonstrate the value of [Plaintiff]'s service."

424 F. App'x 184, 186 (3d Cir. 2011).

The Kontonotas court applied New York law to the claim of unjust enrichment, the elements of which overlap with Pennsylvania's elements:

> (1) performance of services in good faith,
>
> (2) acceptance of the services by the person for whom they were rendered,
>
> (3) an expectation of compensation, and
>
> (4) the reasonable value of the services performed.

However, the key distinguishing factor between Kontonotas and this case is that the pleading in Kontonotas sufficiently indicated the value of services rendered. Id. ("[T]he

evidence was sufficient to demonstrate the value of Kontonotas's service—as calculated by the District Court, 1.25% of the approximately $141 million Hygrosol earned as a direct result of the introduction."). In other words, the compensation or the exact value by which the defendant was unjustly enriched was clearly delineated in the Kontonotas complaint.

In order to succeed on the unjust enrichment claim, Plaintiff would have to allege a reasonable value of the services it performed, and that it was inequitable for Defendant to retain it without payment of value.

### D. Promissory Estoppel

Pursuant to the doctrine of promissory estoppel, a promise which the promisor should reasonably expect to induce action on the part of the promisee, which does induces such action, is binding if injustice can be avoided only by enforcement of the promise. Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc., 636 A.2d 156, 160 (Pa. 1994). In order to maintain an action for promissory estoppel, the aggrieved party must show that:

1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee;

2) the promisee actually took action or refrained from taking action in reliance on the promise; and

3) injustice can be avoided only by enforcing the promise.

Crouse, A.2d at 610.

As promissory estoppel is invoked in order to avoid injustice, it permits an equitable remedy to a contract dispute. Id. As with analysis of a contract claim, the parties' relationship and dealings must be considered when deciding whether a promisee's reliance was justifiable. Tran v. Metro. Life Ins. Co., 408 F.3d 130, 135 (3d Cir. 2005).

"The first essential element of promissory estoppel requires an express promise between the promisor and promisee." Burton Imaging Grp. v. Toys "R" Us, Inc., 502 F. Supp. 2d 434, 439 (E.D. Pa. 2007). In order to qualify as an express promise, "[t]he promise

must be certain and explicit enough so that the full intention of the parties may be ascertained to a reasonable certainty." Ankerstjerne v. Schlumberger Ltd., No. 03-cv-3607, 2004 WL 1068806, at *5 (E.D. Pa. May 12, 2004), aff'd, 155 F. App'x 48, 51 (3d Cir. 2005); see also C & K Petroleum Prods., 839 F.2d at 192; Jersey Constr., Inc. v. Pennoni Assocs., Inc., No. 91-cv-7331, 1993 WL 29999, at *3 (E.D. Pa. Feb. 4, 1993) (characterizing requirement of first element as a "clear and reasonably certain promise"), aff'd, 8 F.3d 811 (3d Cir. 1993). Critically, "[p]romissory estoppel . . . is not designed to protect parties who do not adequately memorialize their contracts in writing." Iversen Baking Co., Inc. v. Weston Foods, Ltd., 874 F. Supp. 96, 102 (E.D. Pa. 1995).

To determine whether Plaintiff has adequately pled this claim, the Court first assesses whether there was in fact a clear, express, and unambiguous promise made. As Plaintiff itself admits in the Opposition to the Motion, a claim for promissory estoppel may fail where a plaintiff merely alleges an implied promise. (ECF 13 at 15). Plaintiff has pled assurances and conversations between two parties about collaborations to be undertaken in the future, but these fall short of what is legally required. The Complaint does not clearly or explicitly allege that these conversations or assurances were made in exchange for obtaining rights to Combidex. Instead, the Complaint alleges efforts to acquire Combidex, on one hand, and conversations between two parties, on the other, without alleging sufficient facts to indicate any express specific promise—or even a connection between these two events. Plaintiff fails to show that that its actions could plausibly be construed as justified or in reliance of a promise when no specific promise has been pled. Given these deficiencies, the Complaint fails to articulate a claim for promissory estoppel.

### E. Fraud by Concealment

Plaintiff's fraud by concealment claim fails because it:

1) does not adequately show concealment;

2) does not establish a duty to speak; and

3) cannot survive under the gist of action doctrine.

### a. Concealment

To state a claim for fraud under Pennsylvania law, a plaintiff must allege:

(1) a representation;

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and

(6) the resulting injury was proximately caused by the reliance.

Feingold v. Graff, 516 F. App'x. 223, 227 (3d Cir. 2013) (citing Gibbs v. Ernst, 647 A.2d 889 (Pa. 1994)).

A party's expression that it will take future action, despite the fact that it knows at that time that it will not take that action, "'is a misrepresentation of existing fact' and may serve as the basis for a fraud claim." Giordano v. Claudio, 714 F. Supp. 2d 508, 519 (E.D. Pa. 2010) (quoting Phoenix Techs., Inc. v. TRW, Inc., 834 F.Supp. 148, 152 (E.D. Pa. 1993)).

To succeed on a claim for fraud at this stage, Plaintiff would have to show a representation made by Defendant. However, the Complaint does not provide details regarding any specific representation made by Defendant, in terms of content, location, time or speaker. Plaintiff claims that Defendant acted fraudulently because it created a new for-profit entity to the exclusion of Plaintiff. However, this conclusion is not supported by facts that show a "misrepresentation of an existing fact" by Defendant regarding how it would license Combidex in the future or the role Plaintiff would play in this endeavor.

### b. Duty to speak

2) does not establish a duty to speak; and

3) cannot survive under the gist of action doctrine.

### a. Concealment

To state a claim for fraud under Pennsylvania law, a plaintiff must allege:

(1) a representation;

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and

(6) the resulting injury was proximately caused by the reliance.

Feingold v. Graff, 516 F. App'x. 223, 227 (3d Cir. 2013) (citing Gibbs v. Ernst, 647 A.2d 889 (Pa. 1994)).

A party's expression that it will take future action, despite the fact that it knows at that time that it will not take that action, "'is a misrepresentation of existing fact' and may serve as the basis for a fraud claim." Giordano v. Claudio, 714 F. Supp. 2d 508, 519 (E.D. Pa. 2010) (quoting Phoenix Techs., Inc. v. TRW, Inc., 834 F.Supp. 148, 152 (E.D. Pa. 1993)).

To succeed on a claim for fraud at this stage, Plaintiff would have to show a representation made by Defendant. However, the Complaint does not provide details regarding any specific representation made by Defendant, in terms of content, location, time or speaker. Plaintiff claims that Defendant acted fraudulently because it created a new for-profit entity to the exclusion of Plaintiff. However, this conclusion is not supported by facts that show a "misrepresentation of an existing fact" by Defendant regarding how it would license Combidex in the future or the role Plaintiff would play in this endeavor.

### b. Duty to speak

Pennsylvania courts have explicitly held that parties to an "arms-length business contract" are not in a special relationship that gives rise to a duty to speak. See eToll, Inc. v. Elias/Savion Advert., Inc., 811 A.2d 10, 23 (Pa. Super. Ct.) ("If parties to routine arms' length commercial contracts for the provision of needed goods or services were held to have a 'special relationship,' virtually every breach of such a contract would support a tort claim."); see also Bruno v. Bozzuto's, Inc., 850 F. Supp. 2d 462, 468 (M.D. Pa. 2012) (same).

There can be no liability for fraudulent concealment absent some duty to speak. Duquesne Light Co. v. Westinghouse Electric Corp., 66 F.3d 604, 611–12 (3d Cir. 1995); Gibbs v. Ernst, 647 A.2d 882, 889 n. 12 (1994); In re Estate of Evasew, 584 A.2d 910, 913 (1990). Plaintiff relies on the case of City of Rome v. Glanton, 958 F.Supp. 1026 (E.D. Pa. 1997) to assert that "a duty to speak may also arise as a consequence of an agreement between parties, or as a result of one party's reliance on the other's representations, if one party is the only source of information to the other party, or the problems are not discoverable by other reasonable means." Id. at 1038. However, the Court goes on to say that "a duty to speak does not arise when both a plaintiff and defendant are sophisticated business entities, entrusted with equal knowledge of the facts and equal access to legal representation" Id.

Plaintiff does not claim that the parties are in any sort of a confidential or fiduciary relationship to argue that there was any duty to speak. It alleges that Defendant had a duty to speak because (a) the parties were engaged in a joint effort, (b) there was a relationship of trust and confidence, and (c) Defendant was a larger and more sophisticated entity and exhibited domination and influence over Plaintiff. (Compl. ¶ 46). These allegations are not supported by the facts, however, as both organizations were business entities with apparently equal knowledge of the subject matter of discussions and legal counsel. In fact, the entire Complaint suggests that it was Plaintiff's efforts and assistance that led to a consummated agreement between AMAG and Defendant. Thus, the facts do not indicate that Defendant

exhibited domination or influence over Plaintiff. Plaintiff does not show that Defendant had a duty to speak.

Also, Plaintiff does not adequately allege the elements of fraud with the "particularity" required by Rule 9(b).

### c. Gist of action doctrine

Third Circuit have consistently applied the gist of the action test to fraud claims. Persuasive authority interpreting Pennsylvania law has restated the gist of the action doctrine in a number of similar ways. These courts have held that the doctrine bars tort claims:

(1) arising solely from a contract between the parties;

(2) where the duties allegedly breached were created and grounded in the contract itself;

(3) where the liability stems from a contract; or

(4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

See, e.g., eToll, Inc., 811 A.2d 10.

Plaintiff relies on cases in which the gist of action doctrine was found not to apply because the defendant acted fraudulently in inducing the plaintiff to enter into a contract or take some action. See, e.g., Synthes, Inc. v. Emerge Med., Inc., 25 F. Supp. 3d 617, 725 (E.D. Pa. 2014); Coll. v. Synergis Educ Inc., No. 14-cv-06966, 2015 WL 5783682, at *5 (E.D. Pa. Oct. 5, 2015).

The mainstay of Plaintiff's allegations is that Plaintiff rendered services/assisted Defendant in obtaining rights to Combidex because Plaintiff understood there was a contract between them and that it would receive certain benefits from Defendant in exchange of these services. Plaintiff does not plead facts to show that it was fraudulently "induced" into rendering any service or enter into any purported contract to support a separate claim for fraud.

## VI. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim is GRANTED as to Counts II, III and IV, with leave to file an amended complaint within 14 days, and DENIED as to Count I.

An appropriate Order follows.

O:\CIVIL 17\17-2024 Intl Strategic Cancer v Stichting\Memorandum partially granting MTD.docx

15